## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JOHNATHAN RODRIGUEZ,** | } | |
| | } | |
| **Plaintiff** | } | |
| | } | |
| **v.** | } | **Case No.  5:16-cv-01067-MHH** |
| | } | |
| **GENERAL INFORMATION** | } | |
| **SERVICES,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Johnathan Rodriguez brings this action under the Fair Credit Reporting Act or FCRA.  Mr. Rodriguez contends that General Information Services inaccurately reported criminal history on a background report, causing him to lose a job opportunity and suffer severe emotional distress.  (Doc. 1, pp. 1, 3-4).[1]  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, GIS has asked the Court to enter judgment in the company's favor on Mr. Rodriguez's FCRA claims.  (Doc. 52).  For the reasons set forth below, the Court denies GIS's motion for summary judgment.

---

[1] The defendant was involved in a corporate conversion in January of 2017 and now is known as General Information Solutions, LLC.  (Doc. 52, p. 1, n. 1).

# I.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). In evaluating a motion for summary judgment motion, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences from the evidence in the non-movant's favor. *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018).  "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

"A litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage.").  A

district court may not make credibility determinations; that is the work of jurors. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). But conclusory statements in a declaration cannot by themselves create a genuine issue of material fact. *See Stein*, 881 F.3d at 857 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Applying these standards, in this opinion, the Court presents the summary judgment evidence in the light most favorable to Mr. Rodriguez.

## II. FACTUAL BACKGROUND

Defendant GIS is a consumer reporting agency. GIS provides credit and background reports to companies to help companies evaluate job applicants. Over a period of three years, GIS prepared three background reports on Mr. Rodriguez: a June 2013 report for Kroger; a March 2016 report for Dollar General; and a May 2016 report for Kroger. (*See* Doc. 47-13, pp. 2–9 (June 2013 report); Doc. 47-16, pp. 2–6 (March 2016 report); Doc. 52-2, pp. 22–27 (May 2016 report)). In July of 2016, GIS reinvestigated the May 2016 report. (Doc. 47-17, pp. 9–14). The May 2016 report and July 2016 reinvestigation form the basis of Mr. Rodriguez's FCRA claim against GIS. (Doc. 47, pp. 8-9). To provide background and context, the Court first describes the June 2013 report and the March 2016 report.

## A. GIS 2013 report for Kroger

In June of 2013, Mr. Rodriguez applied for a position as a dairy clerk with a Kroger grocery store in Huntsville, Alabama. (Doc. 52-5, p. 3, tp. 23). At Kroger's request, GIS prepared a background report on Mr. Rodriguez. (Doc. 52-5, pp. 33-41). The report indicates that Mr. Rodriguez has an extensive criminal history that includes multiple felony convictions in New Jersey for drug offenses. (Doc. 52-5, pp. 35-40). That information is false; Mr. Rodriguez has not been charged with or convicted of a crime. (Doc. 47-3, p. 2, ¶¶ 7–8; Doc. 47-4, p. 2).

The report states that Mr. Rodriguez was "not clear for hire." (Doc. 52-5, p. 33). Kroger did not hire Mr. Rodriguez. (Doc. 52-5, p. 10, tp. 59). Mr. Rodriguez received a copy of the background report in the mail in 2013. (Doc. 52-5, p. 10, tp. 60).[2] He testified that he was not sure what to do about the incorrect report. (Doc. 52-5, p. 11, tp. 65). He stated: "I had no way to even know how to start getting this cleared up." (Doc. 52-5, p. 12, tp. 69).

Based on the 2013 report, Mr. Rodriguez suspected that he might be the victim of identity theft. (Doc. 52-5, p. 12, tp. 66). He conducted research online and

---

[2] Because Mr. Rodriguez discovered the false information in the 2013 report shortly after GIS prepared the report, FCRA's two-year statute of limitations bars Mr. Rodriguez from pursuing a claim related to the 2013 report in his 2016 lawsuit. *See* 15 U.S.C. § 1681p ("An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of – (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs.").

discovered that he could contact the Federal Trade Commission and file a police report. (Doc. 52-5, p. 12, tp. 66). In August of 2013, Mr. Rodriguez filed a police report in Madison County, Alabama. (Doc. 52-5, p. 16, tpp. 82-83; Doc. 52-6, pp. 2-6). Mr. Rodriguez did not contact GIS in 2013 to dispute the background report. He testified that he did not know that he could dispute it. (Doc. 52-5, pp. 18-19, tp. 93-94).

### B. Mr. Rodriguez contacts GIS in March 2016

In March of 2016, Mr. Rodriguez called GIS to request a copy of his background report. GIS's internal call logs describe Mr. Rodriguez's communications as a "dispute." (*See* Doc. 47-15, p. 2). GIS's records contain the following entries:

| | |
|---|---|
| 3/16/2016 | Received dispute from applicant on 03/16/2016. |
| 3/21/2016 | Received dispute from applicant; Unsure as to nature of dispute. |
| 3/21/2016 | Sent email for contact information. |
| 3/22/2016 | Awaiting contact information for the applicant. |
| 3/23/2016 | Awaiting contact information for the applicant. |
| 3/24/2016 | Awaiting contact information for the applicant. |
| 3/28/2016 | Re-sent e-mail for update on contact information. |
| 3/28/2016 | After several attempts this case is being closed due to no contact information available for applicant. |

(Doc. 47-15, p. 2).

Another call log indicates that Mr. Rodriguez contacted GIS again by telephone on April 5, 2016 to request a copy of his background report. (Doc. 52-5, p. 34). The notes for this call indicate that Mr. Rodriguez provided updated contact information to GIS and that GIS mailed Mr. Rodriguez a copy of his background report. (Doc. 52-5, p. 34). Mr. Rodriguez received a copy of his report by mail a few days later. (Doc. 52-5, p. 26, tp. 131). Mr. Rodriguez did not contact GIS to dispute the criminal history information in the report. (Doc. 52-5, p. 26, tp. 132; Doc. 47-2, p. 17, tp. 153). Mr. Rodriguez testified, "No, I did not [dispute the report]. . . . I figured there was really nothing I could do . . . . [My attorneys] had already been helping me." (Doc. 52-5, p. 26, tp. 132).[3]

## C. Dollar General Application and March 2016 GIS Report

Toward the end of March of 2016, Mr. Rodriguez applied for a job at a Dollar General store in Huntsville, Alabama. (Doc. 52-5, p. 19, tpp. 94-95). GIS conducted a background search for Dollar General in connection with Mr. Rodriguez's application. GIS's Vice President of Compliance, Jamie Floyd Pelchat, testified that when GIS created the 2016 report for Dollar General, GIS used identifiers, including

---

[3] GIS contends that Mr. Rodriguez contacted the company in March and April of 2016 to request a copy of his 2013 report, not to dispute the contents of the report. (*See* Doc. 52, p. 16). In his brief in opposition to GIS's summary judgment motion, Mr. Rodriguez characterizes his communications with GIS as a dispute based on GIS's internal notes labeling it as such. (Doc. 47, p. 13) ("GIS's own internal records indicate that Mr. Rodriguez disputed the 2013 Kroger report on March 16, 2016."). The distinction is irrelevant for purposes of this opinion.

first and last name and date of birth, identical to the information that GIS used to search for criminal background data concerning Mr. Rodriguez for the 2013 report for Kroger. (Doc. 47-5, pp. 10–11, tp. 36–38).

GIS completed the Dollar General report on March 28, 2016. (Doc. 47-16, p. 2). The report contains no criminal history and reflects a grade of "Pass." (Doc. 47-16, pp. 2–6). Dollar General hired Mr. Rodriguez. (Doc. 52-5, p. 19, tp. 95). Mr. Rodriguez worked for Dollar General for approximately one week. (Doc. 52-5, p. 19, tp. 95). He left over a disagreement with management about his duties in the store. (Doc. 52-5, p. 19, tpp. 95–96).

### D. GIS's May 2016 report for Kroger

On May 11, 2016, Mr. Rodriguez applied for a job with Kroger. (Doc. 52-5, p. 27, tp. 137; Doc. 52-10, p. 2, ¶ 4). Kroger offered Mr. Rodriguez a job in the meat and seafood department, contingent on Mr. Rodriguez passing a drug test and a background check. (Doc. 52-5, pp. 27–28, tpp. 137, 138; Doc. 52-10, pp. 2–3, ¶ 4). Mr. Rodriguez testified that his wife worked at Kroger. Because he did not have a driver's license, he wanted to work at the store so that he could ride to work with his wife. (Doc. 52-5, p. 12, tp. 68).[4]

---

[4] Mr. Rodriguez does not have a driver's license because the Alabama Department of Motor Vehicles suspended his license for driving under the influence. (Doc. 52-5, pp. 6–7, tpp. 45–48). The driving under the influence charge actually belongs to someone else named Rodriguez. Mr. Rodriguez's identity struggles date back to his teens. Mr. Rodriguez testified that he applied for a driver's permit at the age of 15, but the state of Alabama Department of Motor Vehicles refused to grant him a permit because his record contained a suspended license for driving under the

GIS performed a background check on Mr. Rodriguez in connection with his application to Kroger. (Doc. 52-12, pp. 11–16). On May 19, 2016, GIS reported to Kroger that Mr. Rodriguez has multiple felony convictions for drug offenses, including the felony convictions that appear in GIS's 2013 background report for Mr. Rodriguez, and pending charges for first degree murder, aggravated assault, and weapons possession. (Doc. 52-12, pp. 11–16). That criminal history actually belongs to an individual named Jonathan Rodriguez who was charged with crimes in New Jersey. That individual spells his first name "Jonathan." Mr. Rodriguez testified that he spells his first name "Johnathan." (Doc. 52-5, p. 27, tp. 135; Doc. 47-3, p. 2, ¶ 3). GIS contends that Mr. Rodriguez has used an alias or accepted an alternate spelling of his first name. (Doc. 52, p. 9; Doc. 52-5, p. 22, tp. 113). GIS points to Mr. Rodriguez's Alabama non-driver identification card which contains the name "Jonathan Rodriguez." (Doc. 52-7). GIS also notes that the police report that Mr. Rodriguez filed in 2013 contains the name "Jonathan Rodriguez." (Doc. 52-6, p. 2).

In matching the criminal history of New Jersey's Jonathan Rodriguez to Alabama's Johnathan Rodriguez, GIS used two search identifiers: name and date of

_____

influence. (Doc. 52-5, pp. 6–7, tpp. 45–48). The offense belonged to an individual from New Jersey named Jonathan Rodriguez who shares Mr. Rodriguez's date of birth. Mr. Rodriguez testified that his mother made numerous unsuccessful attempts to resolve the issue, but "finally, my mother just said, I guess you're not getting your permit." (Doc. 52-5, p. 8, tp. 50).

birth. (Doc. 52-12, pp. 13-15) (*see* line entry beginning with "**Public Case #**" and ending with "**Identifiers**") (emphasis in report). GIS indicated in the May 2016 report that it searched records in New Jersey for information concerning "Johnathan Rodriguez." (Doc. 52-12, p. 12) (*see* "JURISDICTION SEARCHED" and "NAME SEARCHED" at the bottom of the page). The reported criminal history information, according to the report itself, concerns "Jonathan Rodriguez." (Doc. 52-12, pp. 13-15) (*see* entry under "**Name on Record**") (emphasis in report). The report contains a space for "Additional Information" next to each listed criminal offense. The "Additional Information" provided states: "PLEASE NOTE THE SPELLING OF FIRST NAME." (Doc. 52-12, pp. 13–16). Although the GIS report contained Mr. Rodriguez's social security number, Ms. Pelchat stated that GIS was not able to confirm whether Mr. Rodriguez's social security number matched the criminal records from New Jersey because "the [offender's] Social Security number was not returned or provided on the court record." (Doc. 47-5, p. 16, tp. 83).[5]

On May 16, 2016, Sandra White, a Kroger employee, graded Mr. Rodriguez as "ineligible for hire" based on the results of the background check. (Doc. 52-12, p. 3, ¶ 6).

---

[5] Yet, in July 2016, someone from GIS contacted the New Jersey Department of Corrections and determined that Mr. Rodriguez's social security number does not match the social security number of the individual whose charged crimes GIS attributed to Mr. Rodriguez. (Doc. 47-5, p. 16, tpp. 83-84; Doc. 47-11, p. 2).

From May 17 to May 19, 2016, Mr. Rodriguez attended new hire orientation at Kroger. (Doc. 52-5, p. 28, tpp. 140–41; Doc. 36-9, ¶ 6). Mr. Rodriguez stated that he was given a schedule "[a]nd when the schedule ended, [he] didn't know what else to do, so [he] waited for a call." (Doc. 55, p. 1, tp. 142). Eventually, Ms. Lockett called Mr. Rodriguez to report to work, but he could not report because he had to pick up his son from school. (Doc. 52-5, p. 29, tp. 148; Doc. 55, p. 1, tp. 143). According to Mr. Rodriguez, Ms. Lockett called him the following day to inform him that his employment was terminated. (Doc. 52-5, p. 29, tp. 148).[6] Concerning his employment with Kroger and his termination, Mr. Rodriguez testified:

> A:  … I was given a week's worth of schedule. . . . And I worked almost a whole week . . . . But only, you know, three or four hours. Because we only had one car. I had to leave to go pick my son up. So I couldn't work the whole full shifts. But I worked a week's worth. And no one told me, hey, come back tomorrow at nine and finish what you need to finish. There was no one there to tell me what to do. So I just – I'd go home and I'd just wait for a call.
>
> Q:  And then your testimony was that you did get a call from Crystal Lockett, correct?
>
> A:  Yes, I did.
>
> . . .
>
> Q:  In May 2016?

---

[6] Ms. Lockett testified that she called Mr. Rodriguez "on or around May 24, 2016" and not on May 21, 2016, as Mr. Rodriguez recalls. (Doc. 36-9, p. 3, ¶ 7).

. . .

A:    I told her I couldn't be in just then when she told me to come in; that I had to pick my son up from school. We had only one car. So I can't do two things at once. She told me that she would call me back to let me know what to do next. I never heard back from her again that day. The next day she called me back. [She said,] "Hi, this is Crystal Lockett. We're going to go ahead and exercise our legal right to let you go since you're still in your probationary period."

Q:    Okay. And – and what did you say in response to that?

A:    "Is there something that I did wrong?" She said, "No. We just don't require your services."

Q:    And that was it?

A:    And that was it.

(Doc. 52-5, p. 29, tpp. 146–49) (internal quotations added).

Ms. Lockett testified that when she terminated Mr. Rodriguez, she was not aware of the results of Mr. Rodriguez's background report. (Doc. 52-10, pp. 3-4, ¶¶ 9, 10). On May 24, 2016, Ms. Lockett completed separation paperwork which identified the reason for Mr. Rodriguez's termination as: "Failure to return to work to complete proper computer based new hire training." (Doc. 52-10, p. 3, ¶ 8; Doc. 52-10, p. 6).

Mr. Rodriguez's wife, Kristy Rodriguez, disputes Ms. Lockett's version of the events leading to her husband's termination. Mrs. Rodriguez testified:

Q:    All right. And then paragraph 6 [of Crystal Lockett's sworn statement], this talks about the orientation that you just told us

about. [Referring to the separation paperwork completed by Ms. Lockett which states]: "On May 17th through 19th, 2016, Mr. Rodriguez never returned to complete the remainder of his orientation." Is that consistent with your recollection of the facts?

A: That is a false statement.

Q: Both sentences, one sentence, either sentence? What's false?

A: That he never returned to complete his orientation. He returned every day but kept getting turned away.

Q: Okay.

A: He kept returning, and they kept denying him to be there.

Q: So you are saying Ms. Lockett is lying here?

A: For that, yes. She was going to call him and say, "Okay, come back [at] this time and finish your last two training videos and we'll put you on the sales floor."

(Doc. 47-6, pp. 11–12, tpp. 229–30) (internal quotations added).

On May 23, 2016, GIS mailed Mr. Rodriguez a Pre-Adverse Employment Notice with the background report attached. (Doc. 52-5, p. 3, ¶ 6; Doc. 52-12, pp. 5-16). The letter notified Mr. Rodriguez that he had five days to dispute the information in the GIS report. (Doc. 52-12, p. 5). GIS enclosed a form with the letter entitled "Disclosure / Dispute Process Request Form." (Doc. 52-12, p. 10). The letter also stated: "Kroger has or will be completing their review of your application within the next few days, and may take action based on the enclosed report." (Doc. 52-12, p. 5). Mr. Rodriguez did not dispute the report within five

days.  (Doc. 52-5, p. 30, tp. 153).  As of May 24, 2016, Mr. Rodriguez was terminated from Kroger.  (Doc. 52-10, p. 3, ¶ 8; Doc. 52-10, p. 6).  By separate letter dated May 31, 2016, GIS notified Mr. Rodriguez that: "[b]ased on information contained in a recently obtained consumer report on you, Kroger has elected not to extend you an offer of employment or continue your employment."  (Doc. 52-5, p. 43; Doc. 52-11, p. 19).

On June 1, 2016, Ms. White emailed a "Hold Report" to the Kroger store in Huntsville.  The report notified Kroger that Mr. Rodriguez was not eligible for hire. (Doc. 52-11, pp. 22–23; Doc. 52-12, p. 3, ¶ 11).  Ms. White asserts that with the exception of the email she sent to the store on June 1, 2016, she did not communicate with the store or speak to Crystal Lockett.  (Doc. 52-12, p. 4, ¶ 12).

Mr. Rodriguez filed his complaint in this action on June 30, 2016.  (Doc. 1).[7]

### E. GIS investigates Mr. Rodriguez's background report

On July 15, 2016, GIS received a dispute from Mr. Rodriguez.  Mr. Rodriguez reported that the criminal charges from New Jersey "[did] not belong to him."  (Doc. 47-11, p. 2).  GIS initiated a "reinvestigation."  (Doc. 47-11, p. 2).  A representative

---

[7] In October or November of 2015, Mr. Rodriguez saw an ad on television for the law firm of Francis and Mailman.  (Doc. 52-5, p. 15, tp. 81).  In the early part of 2016, Mr. Rodriguez retained Francis and Mailman to represent him in this case.  In addition to the present action, Mr. Rodriguez filed suit in the Eastern District of Pennsylvania against numerous credit reporting agencies.  *See Rodriguez v. Trans Union, LLC, et al*, No. 5:16-cv-1891-BMS (E.D. Pa. filed April 21, 2016).  Mr. Rodriguez also filed a class action suit in this Court against Kroger.  *See Rodriguez v. The Kroger Company*, No. 5:16-cv-2045-AKK (N.D. Ala. filed Dec. 20, 2016).

of GIS contacted the New Jersey Department of Corrections and "verified" that Mr.

Rodriguez's social security number "does not match" the social security number of

the individual with the New Jersey criminal charges. (Doc. 47-11, p. 2).

By letter dated July 19, 2016, GIS notified Mr. Rodriguez that it had

completed its reinvestigation concerning criminal records contained in his

background report. (Doc. 47-17). The letter states in relevant part:

> General Information Services (GIS) has completed its reinvestigation of your dispute. We have enclosed a copy of your consumer report that reflects any changes we may have made to your consumer file as a result of our reinvestigation for your review.
>
> We have also notified Kroger that your dispute is now complete. Additionally, if our reinvestigation resulted in any changes to your file, we have provided an updated copy of your report to Kroger.
>
> Please see below for the results of the reinvestigation performed to address your claim(s).
>
> To investigate your dispute concerning Case # 14000506, # 10002991, and #10000120 reported out of Middlesex County, NJ, we contacted the Department of Correction at 732-297-3636. The Clerk confirmed that the information in our initial report requires an update. Therefore, we have made a change to your file.
>
> If GIS's reinvestigation has not resolved your request to your satisfaction, you may add a statement to your report disputing the accuracy or completeness of the information.

(Doc. 47-17, p. 2).

Although the letter indicates that GIS updated Mr. Rodriguez's report, the

report attached to the letter dated July 19, 2016 still contains all of the criminal

charges and convictions listed in the May 2016 report. Under the heading for criminal history, the July 2016 report lists Case # 14000506 (noting pending charges for first degree murder, unlawful possession of a weapon, aggravated assault, conspiracy, and hindering apprehension); Case # 10002991 (noting felony conviction for manufacture and distribution of a controlled substance); and Case # 10000120 (noting felony conviction for distributing a controlled substance on or near school property). (Doc. 47-17, pp. 10–13).

## III. DISCUSSION

The Fair Credit Reporting Act provides that "consumer reporting agencies may furnish consumer reports for limited purposes," and those agencies "must maintain reasonable procedures to ensure compliance with the Act . . . ." *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1317–18 (11th Cir. 2009) (internal citations to statute omitted). Section 1681e(b) of the Act states that when a consumer reporting agency prepares a consumer report, the agency must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). FCRA "creates a private right of action against consumer reporting agencies and furnishers of information for negligent or willful violations of these duties imposed by this legislation. *See* 15 U.S.C. §§ 1681n, *o*." *Ray v. Equifax Info. Servs., LLC,* 327 Fed.

Appx. 819, 826 (11th Cir. 2009); *see also Levine*, 554 F.3d at 1318 (reporting agency may be civilly liable under FCRA for negligent or willful violations of the statute).

To establish a violation of section 1681e(b) of the Act, Mr. Rodriguez must "present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information" and that he "was damaged as a result of the allegedly inaccurate [] credit report." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156, 1160-61 (11th Cir. 1991); *see also Ray,* 327 Fed. Appx. at 826 (same); *Jackson v. Equifax Info. Servs., LLC*, 167 Fed. Appx. 144, 146 (11th Cir. 2006) (same). An agency will not be liable for an inaccurate report if the agency establishes that the report "was generated by following reasonable procedures[.]" *Jackson*, 167 Fed. Appx. at 146. Moreover, if a plaintiff does not "'produce evidence of damage resulting from a FCRA violation,'" then a defendant is entitled to summary judgment on a FCRA claim. *Ray*, 327 Fed. Appx. at 826 (quoting *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002)).

It is undisputed that GIS's May 2016 report concerning Mr. Rodriguez is inaccurate. Therefore, the Court may enter judgment in favor of GIS on Mr. Rodriguez's FCRA claim if GIS can establish as a matter of law that it followed reasonable procedures when it created the May 2016 report or if Mr. Rodriguez cannot produce evidence that demonstrates that the inaccurate information in the May 2016 injured him.

## A. Reasonableness of GIS's Procedures

In the Eleventh Circuit Court of Appeals, the question of whether a consumer reporting agency followed reasonable procedures "will be a jury question in the overwhelming majority of cases." *Cahlin*, 936 F.2d at 1156. This case is not an exception to the general rule.

Here, in the "Criminal Records" section of the May 2016 report, GIS indicated that it searched a criminal records database for the name "Jo**h**nathan Rodriguez," (Doc. 52-12, p. 12) (bottom of the page) (emphasis added), but the report states that the "**Name on Record**" for each criminal charge reported is "Jonathan Rodriguez." (Doc. 52-12, pp. 12-15) (emphasis in report). And the annotation for each criminal charge states: "PLEASE NOTE THE SPELLING OF FIRST NAME." (Doc. 52-12, pp. 13–16). All of the charges either were prosecuted in or were pending in New Jersey, but the May 2016 report reflects an Alabama address for Mr. Rodriguez. (*Compare* Doc. 52-12, p. 11, and Doc. 52-12, p. 12 (JURISDICTION SEARCHED – Middlesex County, NJ)). Jurors reasonably could conclude that the obvious discrepancies in the May 2016 report should have prompted GIS to investigate further before including the New Jersey criminal history in the report that GIS sent to Kroger for Mr. Rodriguez.

In evaluating the reasonableness of GIS's procedures, jurors could consider the fact that GIS did not include the New Jersey criminal history in a report regarding

Mr. Rodriguez that GIS created in March 2016, only two months before GIS sent Kroger the May 2016 report. And jurors could consider the fact that in July 2016, GIS was able to detect the error in the May 2016 report with one phone call to the New Jersey Department of Corrections.

GIS argues that its reporting complies with industry standards which, in the opinion of GIS's expert, require consumer reporting agencies to use at least two identifiers to consider criminal records a match. (Doc. 52-3, pp. 8-9). GIS also argues plaintiff Johnathan Rodriguez has used the alias "Jonathan Rodriguez." GIS points to Mr. Rodriguez's Alabama non-driver identification card and a 2013 police report that Mr. Rodriguez filed. GIS's expert testimony about general industry practice at best creates a question of fact about whether it was reasonable for GIS to use only two identifiers for the May 2016 report, and GIS did not rely on Mr. Rodriguez's Alabama non-driver identification card or his 2013 police report when creating the May 2016 report, so that information sheds little light, if any, on the reasonableness of GIS's procedures.

In this case, as in most cases in the Eleventh Circuit, a jury must determine whether GIS followed reasonable procedures when it created the May 2016 report. *Cahlin*, 936 F.2d at 1156; *Williams v. First Advantage LNS Screening Sols., Inc.*, 155 F. Supp. 3d 1233, 1252-53 (N.D. Fla. 2015) ("Williams has identified a number of shortcomings in First Advantage's procedures, including its use of only two

identifiers (name and date of birth) to match records for consumers with common names. First Advantage has provided evidence that its procedures are generally acceptable in its industry and result in a relatively low number of errors. A jury must weigh this information and decide whether First Advantage's process represents that of a reasonably prudent person under the circumstances.") (internal citations and quotations omitted).[8]

## B. FCRA Injury

Mr. Rodriguez contends that as a result of GIS's inaccurate background report, Kroger terminated his employment, and he suffered extreme emotional distress. There is disputed evidence concerning both categories of injury.

### 1. Termination

GIS maintains that the inaccurate information in the May 2016 report did not cause Mr. Rodriguez to lose his job at Kroger. GIS asserts that Crystal Lockett, the Kroger employee who made the decision to terminate Mr. Rodriguez's employment, was not aware of Mr. Rodriguez's background report when she decided to terminate

---

[8] As a blanket defense, GIS argues that Mr. Rodriguez did not dispute the contents of his report. As stated, to prove his FCRA claim, Mr. Rodriguez only must demonstrate that the May 2016 GIS report was inaccurate and that he suffered damages because of the inaccurate report. Mr. Rodriguez does not have to prove that he challenged the report. And the record shows that in July 2016, when GIS received a report that the information in the May 2016 report was incorrect, GIS determined that the criminal background information in the report was false, but GIS did not remove the information from the next report that it issued for Mr. Rodriguez.

him.  GIS argues that Kroger terminated Mr. Rodriguez's employment because he did not complete his new hire orientation.

Mr. Rodriguez disputes Ms. Lockett's version of the events leading to his termination.  He testified that when he received notice of his termination, he was waiting for Ms. Lockett to tell him when he should return to the store to complete his new hire orientation and computer training.  Mr. Rodriguez's wife, who works at the Huntsville store with Ms. Lockett, testified that Ms. Lockett's account of her decision to terminate Mr. Rodriguez is not truthful.  Ms. Rodriguez stated that Ms. Lockett was supposed to tell Mr. Rodriguez when to report to the store to complete his orientation.  (Doc. 47-6, pp. 11–12, tpp. 229–30) ("She [Ms. Lockett] was going to call him and say, 'Okay, come back [at] this time and finish your last two training videos and we'll put you on the sales floor.'").

Reasonable jurors may conclude that when she notified Mr. Rodriguez that he was terminated, Ms. Lockett was aware that there was a problem with Mr. Rodriguez's background report.  Jurors will have to untangle the evidence concerning the timeline of Mr. Rodriguez's termination.  The May 2016 report indicates that GIS completed the report on May 19, 2016.  (Doc. 52-12, p. 11).  Sandra White, the Kroger employee who worked directly with GIS, asserts that as of May 16, 2016, five days after GIS began its investigation on May 12, 2016, GIS had placed Mr. Rodriguez on "hold" status, and she had determined that Mr.

Rodriguez was ineligible for hire.  (Doc. 52-12, pp. 2-3, ¶¶ 5-6).  On May 24, 2016, Mr. Rodriguez's name appeared on Kroger's electronic "Master Hold Sheet" at 4:03 a.m.  (Doc. 52-12, p. 3, ¶ 8).  Ms. Lockett stated that on May 24, 2016, she told Mr. Rodriguez that he was terminated.  (Doc. 36-9, p. 3, ¶ 7).  On the same day, she completed separation paperwork which identified the reason for Mr. Rodriguez's termination as:  "Failure to return to work to complete proper computer based new hire training."  (Doc. 52-10, p. 3, ¶ 8; Doc. 52-10, p. 6).  Ms. White stated that Kroger's internal electronic system indicates that Mr. Rodriguez's termination was entered in the system on May 26, 2016 with an effective date of May 19, 2016.  (Doc. 52-12, p. 3, ¶ 9).  Kroger's system indicates "Candidate Withdrew – Other."  (Doc. 52-12, p. 3, ¶ 9).

Ms. White stated that she did not report the results of her investigation to the Huntsville store until June 1, 2016.  (Doc. 52-12, p. 3, ¶ 11).  Ms. Lockett asserts that she could not access the status of Mr. Rodriguez's background report until Kroger reported it to her, and she never received a copy of the report.  (Doc. 52-10, pp. 3-4, ¶ 9).  But jurors could conclude that the delay in receiving a report indicated to Ms. Lockett that there was a problem with the background report.  The record shows that in March 2016, GIS completed an accurate background report for Mr. Rodriguez in five days.  (Doc. 47-16, p. 2).  That report contained a grade of "Pass" and a green flag.  (Doc. 47-16, p. 2).  Jurors reasonably could conclude from this

evidence that GIS can complete a favorable report in less than one week. Ms. Lockett requested a background report for Mr. Rodriguez on May 11, 2016. (Doc. 52-12, p. 2, ¶ 4; Doc. 52-12, p. 11). Given her experience, Ms. Lockett could have realized by May 24, 2016, nearly two weeks after she requested the background report, that there was a problem with the report.

At the summary judgment stage, the Court must view disputed facts in favor of the non-moving party. Because a fact issue exists as to whether Kroger terminated Mr. Rodriguez because of the background report or for a reason unrelated to the report, GIS is not entitled to summary judgment on Mr. Rodriguez's claim under section 1681e(b).

### 2. *Emotional Distress*

FCRA plaintiffs may recover emotional distress damages. *See Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d 1228, 1235 (M.D. Ala. 2002) (citing *Stevenson v. TRW, Inc.*, 987 F.2d 288, 296 (5th Cir. 1993)). GIS contends that Mr. Rodriguez has not put forward sufficient evidence of emotional injuries that would enable a reasonable jury to find in his favor on his FCRA negligence claim. The Eleventh Circuit Court of Appeals has held that "the existence of compensable emotional distress is relevant to the amount of damages a plaintiff will ultimately recover" in an FCRA case. *Levine*, 437 F.3d at 1124; *see also Collins v. Experian Info. Sols., Inc.,* 775 F.3d 1330, 1336 (11th Cir. 2015) (remanding the district court's

summary judgment decision so the district court could analyze whether the plaintiff's evidence of emotional distress was sufficient to present a jury question on actual damages). But district courts do not agree on whether a plaintiff must present more than his own testimony as evidence of emotional distress. *Compare Moore v. Equifax Info. Servs. LLC*, 333 F. Supp. 2d 1360, 1365 (N.D. Ga. 2004) (plaintiff's testimony that he suffered humiliation and embarrassment as a result of the alleged FCRA violation was sufficient to create a triable jury question as to damages); *and Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1347 (N.D. Ga. 2015) (plaintiff's testimony of emotional harm was sufficient to establish a jury question), *with Abdo v. Sallie Mae, Inc.*, No. 3:11-CV-111-J-32-JRK, 2014 WL 3053172, at *2 (M.D. Fla 2014); *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1267 (S.D. Fla. 2009).

Mr. Rodriguez has presented sufficient evidence to create a question of material fact as to whether his emotional distress constitutes actual damages. After Kroger terminated Mr. Rodriguez, he received a copy of his background report in the mail. (Doc. 59-4, p. 153). Mr. Rodriguez described feeling as though "there was nothing I … could do. I thought I was just thrown into the river and left to fight, to swim in the river current." (Doc. 59-4, p. 154). In July 2016, Mr. Rodriguez received an "updated" report. (Doc. 47-17, pp. 10–13). However, Mr. Rodriguez explained: "[E]verything was still on my background…. The felonies were still

there. And after seeing this, [I] went into a deeper state of depression, realizing that no one could help me." (Doc. 47-2, p. 20, tp. 164). When asked whether he was happy, Mr. Rodriguez responded: "All of this still gets to me, and it makes me sad, depressed and mad every day I wake up." (Doc. 47-2, p. 22, tp. 194). When asked what he wants to get out of his lawsuit, Mr. Rodriguez responded that he "want[s] to know wherever [he goes he'll] be safe" and that he no longer will have to "fear stepping outside" because of the felonies on his background report. (Doc. 59-4, p. 214). This testimony is sufficient to support Mr. Rodriguez's allegation that he has suffered emotional harm due to GIS's conduct. *See Smith*, 81 F. Supp. 3d at 1347 (holding that plaintiff's testimony that he suffered emotional distress and loss of sleep, weight loss, and anxiety was sufficient evidence of mental anguish damages).

Moreover, Mr. Rodriguez's testimony is corroborated by evidence "'reasonably and sufficiently explain[ing] circumstances[] surrounding [his] emotional injuries." *Smith*, 837 F.3d at 611. In *Abdo v. Sallie Mae, Inc.* the district court considered plaintiff's testimony that he suffered "continuing and multiple years of injury to [his] reputation and shame, embarrassment, humiliation, emotional distress, mental distress, mental anguish, and hurt feelings" because of inaccuracies about student loans on his credit report. 2014 WL 3053172, at *2. The plaintiff's testimony was corroborated by his brother-in-law who listed examples of harm and distress. 2014 WL 305172, at *2. This testimony satisfied the district court that an

issue of material fact existed as to whether the plaintiff suffered damages as a result of the alleged FCRA violation.

Mr. Rodriguez's wife testified: "[H]e's gotten upset a few times that he can't support us like a man…. He apologizes to me and gets – he cries about that. He's like, 'I'm sorry that you can't have your white picket fence. I'm sorry that you can't stay home and take care of our son. I'm sorry that, you know, we can't afford the three children of our dreams.'" (Doc. 47-6, p. 10, tp. 179). This evidence corroborates Mr. Rodriguez's testimony about his mental anguish. *Cf. Rambarran*, 609 F. Supp. 2d at 1269 (plaintiff's emotional damages claims did not survive summary judgment because he failed to provide corroborating evidence).[9] Consequently, there is a genuine issue of material fact as to whether Mr. Rodriguez has suffered actual damages, and GIS is not entitled to summary judgment.

---

[9] GIS's reliance on *Nagle* is misplaced. (Doc. 52, pp. 21-22). In *Nagle* the plaintiff's FCRA claim went to trial. 297 F.3d 1305, 1306 (11th Cir. 2002). The jury found that the credit reporting agency was negligent but did not award actual or punitive damages. *Nagle*, 297 F.3d at 1306. The district judge awarded $100,000.00 in attorneys' fees. *Nagle*, 297 F.3d at 1306. The Eleventh Circuit Court of Appeals reversed and explained that because the jury found that the plaintiff produced no evidence of damages, the plaintiff was not "successful" and could not receive attorneys' fees. *Nagle*, 297 F.3d at 1307. Here, at the summary judgment stage, Mr. Rodriguez has produced evidence of damages as a result of GIS's alleged FCRA violation. If a jury finds in favor of GIS at trial, then Mr. Rodriguez will not succeed on his FCRA claim, and he may not receive attorneys' fees. But his evidence is sufficient to survive GIS's motion for summary judgment.

## C. Willfulness

To prove that GIS willfully failed to comply with a requirement under the FCRA, Mr. Rodriguez must produce evidence that GIS acted with knowing or reckless disregard for its duties under the statute. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57 (2007) ("[W]here willfulness is a statutory condition of civil liability, it is generally taken to cover not only knowing violations of a standard, but reckless ones as well."). Mr. Rodriguez must show that GIS's conduct was "not only a violation under a reasonable reading of the statute's terms, but . . . that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. If GIS relied on an objectively reasonable but incorrect construction of the statute, then GIS cannot be said to have willfully violated the law. *Safeco*, 551 U.S. at 69. In determining whether a particular construction of FCRA is objectively reasonable, a court must consider the text of the statute and any "guidance from the courts of appeals or the Federal Trade Commission that might have warned [a reporting agency] away from the view it took." *Levine,* 554 F.3d at 1318 (citing *Safeco,* 551 U.S. at 69–70).

As previously discussed, GIS prepared several reports in 2016 pertaining to Mr. Rodriguez. The report that GIS prepared for Dollar General in March of 2016 was accurate. The report that GIS created two months later for Kroger included false information concerning pending criminal charges and criminal convictions for

serious violations of the law. In July 2016, after Mr. Rodriguez filed this lawsuit, GIS conducted a "reinvestigation" of Mr. Rodriguez's May 2016 report. GIS determined that the criminal charges and convictions listed in the May 2016 report were incorrect. By letter dated July 19, 2016, GIS notified Mr. Rodriguez that the information reported in May 2016 concerning his criminal record "required an update." The "updated" report that GIS sent to Mr. Rodriguez with the July 2016 letter still attributed criminal charges and convictions to Mr. Rodriguez. Based on this evidence, a reasonable trier of fact could conclude that GIS acted recklessly and disregarded FCRA's mandate that a reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

In addition, in late 2014 and early 2015, the Consumer Financial Protection Bureau investigated GIS's procedures for criminal record reporting. (Doc. 47-5, p. 19, tpp. 101–02; Doc. 47-9, pp. 36–59). At the conclusion of its investigation, the CFPB issued a consent order. The order states that GIS's procedures "resulted in the reporting of mismatched criminal record information about consumers." (Doc. 47-9, p. 40). Under the October 2015 consent order, GIS had to develop procedures "to assure maximum possible accuracy for information reported" and use software "to compare and reconcile discrepancies in criminal records in all reports generated . . ." (Doc. 47-9, pp. 46–48, 59).

GIS's use of only two identifiers in May of 2016, and GIS's failure to explore the facial discrepancies in the May 2016 report regarding Mr. Rodriguez seem to violate the terms of the consent order. Those violations, if proven, may demonstrate that GIS acted with reckless disregard for its duties under the FCRA. *Safeco*, 551 U.S. at 57.

Based on the foregoing, GIS is not entitled to summary judgment as to Mr. Rodriguez's willful violation claim under section 1681k.

## IV. CONCLUSION

For the reasons stated, the Court denies GIS's motion for summary judgment (Doc. 52). Mr. Rodriguez's motion for an extension of time to disclose a rebuttal expert (Doc. 32) is moot. GIS's motion to strike Mr. Rodriguez's expert report (Doc. 38) and Mr. Rodriguez's motion to strike GIS's expert report (Doc. 46) are moot. The Court asks the Clerk to please TERM Docs. 32, 38, 46, and 52.

**DONE** and **ORDERED** this February 19, 2019.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE